Good morning. May it please the Court. My name is Peter Wilson. I'm from the firm of Brown Rudnick. I'm representing the plaintiff appellant in this case, Punchbowl, Inc., which I will refer to today as Punchbowl. With me today is my colleague Franklin Kurbacek, also with Brown Rudnick, and also Matt Douglas, the founder and CEO of Punchbowl, who's come here from Boston for today's hearing. I'd like to, as an initial matter of reserve, five minutes of my time in order to rebuttal. Just mind the clock. Okay. So this case presents a critical issue concerning the scope and reach of the federal trademark statute, the Lanham Act, and the First Amendment of the Constitution. Specifically, the question before this Court is whether the Rogers test, which was established in the Second Circuit in the Rogers v. Grimaldi case, and which limits the Lanham Act based on First Amendment concerns, applies to the use of a mark, whereas here the defendant uses it as an overarching brand for a line of goods and services in connection with the publication that happens to feature news and reporting. Simply put, the Rogers test does not apply in this case, and accordingly, it should not have been the basis of the Court's dismissal of Punchbowl's complaint. Moreover, even if the Rogers test did apply, A.J. Press's use of the Punchbowl mark is explicitly misleading and therefore does not protect A.J. Press's use of the mark. The District Court's decision should be reversed because A.J. Press does not use the Punchbowl mark in an artistic work or in an expressive manner. Now, there is no question that the content of their publications is protected by the First Amendment. It's news and reporting. We value that. But this is not a case where the plaintiff is trying to stop the defendant from using the word Punchbowl in its stories or even in a headline of a story. What we're concerned about here and what distinguishes this case from all the cases that the defendant has relied upon in its underlying motion is that this is not an expressive use. The content of the publication is, this is the title of a series of publications, electronic newsletters, a website, a series of podcasts, and had we been able to take discovery in this case, we would be able to show that they also use it for event planning. They sell advertising for events. This is not the title of an artistic work, not the title of a book or a movie, which was the case in the vast majority of cases that have applied the Rogers doxy. Isn't it used as a title, at least in a substantial part? It is different because, for example, in the Empire case, you had Empire as the name of a show. Everything else that the court said was permissible was merely to promote the show. So there was music, there were mugs, there was apparel, but it was all to promote this one work. Here, you've got Punchbowl, and that housemark is used for this line of pure trademark use. But how does that make it less expressive? It seems like they're just using the expression more. It's a term that has different meanings to different people. They have a particular reason why they want to use it, because it evokes insider Washington, D.C. politics. In terms of our case law, almost everything has gone the way of the defendants in these cases. It seems quite a bit different than the Honey Badger case. This case, though, it's all about the context. Like I said, if this case were about them using Punchbowl in a headline for a story, or in text to report the news, then Rogers would apply, because this court put it perfectly in New Kids on the Block. Just to be clear, if they had a newsletter that just said, The Punchbowl News, and that was their weekly newsletter, that would be covered by Rogers? No, that would not either. If there were a use of Punchbowl that was done to convey news and information to people, not as the brand. I know it seems like a minor distinction, but it's a profound one. When you start using something, the word Punchbowl doesn't express what's happening in the news. It has nothing to do with the news. If I might follow up, it almost sounds like you're saying that the mark has to be expressive, and not the work to which it refers has to be expressive. It seems like the latter is the correct understanding. What's your response to that? Well, I think in some cases, the use of a term itself is expressive, particularly when it comes to artistic works, because the content of a movie, or a song, or a play is enmeshed with the title. The title, and this court has noted several times, consumers don't rely on titles to determine the source of a product or service. They rely on titles of artistic work to know something about the content. That's very different. We're not talking about an artistic work. We're talking about a pure commercial business that puts out a line of products. Those products happen to have news and information. I would ask this court to focus on the language in the New Kids on the Block case, where I In that case, the court made it clear that it was not holding that the First Amendment provides absolute immunity for tortious conduct in connection with news gathering and dissemination. Rather, the court has balanced the First Amendment values against plaintiffs' intangible property rights. So you're trying to balance these two concerns. There was no such balancing done by the district court in this case, because if AJ Press had to change its name, and there has been ample confusion, even without discovering being taken, we've submitted things to the court that show there were consumer confusion. But if AJ Press had to adopt a different name, that would not impact their ability to report news or commentary. If we were saying, you can't ever use the word punch bowl, well, that would be overreaching, and that would bring into play First Amendment concerns. Because in the context of their stories and their articles, they're using the word punch bowl in a way that relates to the U.S. Capitol. But this is different. This uses an overarching brand. If they had to call their, for example, if they called the publication AJ Press, and then used punch bowl in the context of stories, there never would have been a case filed here. Changing their brand would not impact their First Amendment rights whatsoever. It doesn't detract from their ability to report and comment on the news. But that's typically not an argument we allow in the First Amendment context, that we can force somebody to do it differently on the theory that it wouldn't affect their First Amendment rights. That's not normally... Well, there also, there hasn't been a case where the name of a publication has been allowed to be used just because the content of the publication is expressive. In the news and in the press, that has come out of this circuit and others that invoke the Rogers Doctrine, which is a significant undercutting of the Lanham Act. When all of a sudden the court decides we're not going to allow the parties to take discovery, we're not going to apply the well-established sleek craft likelihood of confusion factors, we're not going to do any of that because we're concerned about First Amendment concerns. In those cases, virtually everyone involved in artistic work. And that makes sense. It makes sense because the title of a work, as the courts note, that's not something consumers rely upon as a source identifier. It's also enmeshed with the content of the work much more, so it's sending a message itself. News and reporting, the only case that they have is this New Kids on the Block. In that case, New Kids on the Block was not used. It was used for a 1-900 phone line, so people could call in and vote for their favorite New Kid on the Block. I can't remember who mine was. But the defendants in that case were not calling their publication New Kids on the Block daily. It would have been a completely different situation. They had to use the mark New Kids on the Block to identify the subject of the polls that were being conducted. So our position is, there has been, what the district court has done, it's sort of gone point A, point B, point C, if you walk through case law, and all of a sudden you're out here. Where people have forgotten to ask themselves the basic question, what First Amendment values are being impinged here? If they were forced to change the name of their publication. It does apply, which we strenuously believe it does not. We're not going to argue there's no relevance. I mean, it's funny, most of the cases talk about whether there's artistic relevance between the mark and the work. There's relevance here. They have a back story. It's not artistic. But that's not a point that we're arguing. But the use of Punchbowl in the way they do is explicitly misleading in and of itself. And the case in Draper, the it can be misleading. It all depends on what you're talking about. And here, again, you're talking about something being used as a housemark, not just as a title of a work. I see I am, I do want to preserve my five minutes for rebuttal. I guess just before you sit down, I mean, the issue here is that you're talking about two fairly different businesses, one that does greeting cards and the other that's doing news about Washington, D.C. And so, aren't these being used in a different way? Well, that is exactly an issue that would be explored under a traditional trademark infringement case using the sleek craft factors. And we would explore that in Discovery. I mean, one of the main things I would want in Discovery is to ask them about the full nature of the goods and services offered under their mark. I don't believe it's just for news publications. You can find that on their website. But in doing a little research, it's not in the record because we couldn't take Discovery. I think they also use Punchbowl to organize events, to sell advertising at events. We do electronic greeting cards, but also invitation for events that people can use. I mean, there is a reason that our client has received numerous emails from people thinking that we were them since they rolled out. They're both offered on the internet. They both focus on electronic communications, and there is something again that we would explore in Discovery, but we weren't given the chance to. You want to reserve? Yeah, I'm down to $350,000, so yes. And so, Council, before you begin, just a reminder that we're going to do hard stops. So the 12 listed is for you, and the 3 is for the Council as well. So is that okay? Yes, it's 12 and 3, and I may actually yield more time. Yeah, if you want to cede, that's fine. Thank you. May it please the Court. Ian Ballin, Nina Boyagi, and Rebecca Guyon of Greenberg Traurig for Appellee A.J. Press. This is an important First Amendment case involving use of a common English language word, Punchbowl, where the application of Ninth Circuit law is clear, and the district court ruling is not clearly erroneous. Our position is supported not only by our own briefing, but by the amicus briefs of the Electronic Frontier Foundation, and by a group of trademark law professors, including Stanford's Mark Lemley and Harvard's Rebecca Tushnet, among others. The law here is very clear. The first question, whether the test applies, the appellant is asking the court to overlook controlling precedent and come up with a new test based on whether the use involves a brand. That's not Ninth Circuit law. The Rogers test... Counsel, if we apply Rogers and uphold that neither exception applies, does that result in a win for you on the Lanham Act claim only, or all of the claims? That's a very good question. It applies to all of the claims, indeed. This court's reported decision in ESS Entertainment v. Rockstar made clear that the First Amendment protects not only the Lanham Act claims, but also state law claims, and so it would resolve all of the issues in the case. The Rogers test applies to... The Rogers test applies because, in the Fox case, whether a mark has attained a meaning beyond its source-identifying function is merely a consideration under the first prong of the Rogers test. What we have here is an attempt to conflate part of the two-prong Rogers test with the threshold question of whether the First Amendment applies, and Fox is very clear. Fox actually rejected the same argument. The Rogers test includes a threshold requirement that a mark have attained a meaning beyond its source-identifying function. Fox at 1198 rejected this very argument. The only threshold requirement for the Rogers test, according to the Ninth Circuit in Fox, is an attempt to apply the Lanham Act to First Amendment expression. Indeed, even in the Gordon case, although the court found there were disputed issues of facts on the second prong of Rogers express, you know, whether the use is explicitly misleading, that possibility had no bearing on the threshold question, and the appellant is conflating these issues. Counsel, if I might follow up. Sure. As a preface for this question, we've got amici briefs, as you mentioned, that say if there's basically any discovery allowed in these cases, it chills First Amendment rights and shouldn't have a balancing test and so forth. But what's your position on whether there is potentially a fact issue about explicitly misleading, that you've got these confused emails and people writing in, so there should have been some discovery? Right. Well, my colleague will address that in her portion, but I mean, as a general proposition, there isn't admissible evidence of actual confusion. There's a hearsay declaration prepared for litigation, you know, by counsel. And again, you know, our contention is that the case law is very clear. It's a much higher standard. Under Rogers, if the Rogers test applies, the two-prong test, first of all, does the secondary use have some artistic relevance? That's a very low standard. Anything above zero satisfies the Ninth Circuit standard. And then the second prong sets a very high bar. Is the use explicitly misleading? That's a much tougher standard than whether there's simply confusion. You take the position that just the use of the term punchbowl itself is expressive? Well, first of all, we don't use just punchbowl. We use punchbowl news. We use it in combination with a very creative, artistic, and expressive logo, the inverted U.S. capital with pink punch in it, showing the nonpartisan nature. And that has an expressive context, which is punchbowl is the Secret Service codename for the U.S. capital. This is a journal about inside politics. The award-winning journalists who report and issue this commentary operate from within the U.S. capital. And that's all communicated here. It's not just punchbowl. That's a common English language word. The appellant does not own that word. There are many other punchbowl marks in the world. We use punchbowl news. We also use it in conjunction with the logo, which is very creative, and it communicates what the publication is about. We also consistently refer to the three award-winning journalists who report this news. And so it is not just the use of punchbowl here. It's a lot more. And does the mark even need to be expressive, so long as it's referring to a work that is expressive? Well, I mean... ...you really need to take on? Right. I mean, I think you're right. I don't think we need to go that far. But I think in this case, we also have that evidence as well. And the punch is neither red nor blue. It's a mixture for both states, right? Yeah, it's pink. The idea is to communicate nonpartisan political commentary. And again, also, it's political commentary. This is not anodyne news reporting. This is political commentary entitled to a very high level of First Amendment protection. And the standard in the Ninth Circuit is not, is it artistic? It's, is it expressive? There's nothing more expressive entitled to First Amendment protection than political speech and commentary. Your friend on the other side said, well, you could just change the name and have the same operation. How do you respond? Well, I mean, First Amendment case law has never imposed that kind of balancing test where a court can tell someone that their chosen expression under the First Amendment needs to be changed. That would be a terrible standard. I don't believe there's any authority for that. So, let me continue with the threshold factor. In Fox, the Ninth Circuit cautioned that determining whether Rogers applies by reference to the title alone, without considering the underlying expressive work, conflicts with our precedent. That's at page 1197, quoting Brown, to your question. And Fox further criticized in a footnote, the Second Circuit's approach, reasoning that Rogers might not apply to misleading titles that are confusingly similar. In other words, the Ninth Circuit's already considered appellant's arguments and rejected these very arguments. So, for these reasons, we think it obviously does apply with respect to artistic relevance. Plaintiff actually has waived that argument. It was not properly raised, but even if it had been raised, the use with the logo, with the credo, all of these have artistic relevance and expressive relevance. And with respect to whether something's explicitly misleading, the Ninth Circuit test requires an explicit indication, overt claim, or explicit misstatement. The focus really is on the communication from the secondary user, not the intent, not some of the other things that my colleague will address with respect to discovery. And here, you have different logos, colors, use with name, and the like. So, for all of these reasons, we think it's different. We think the cases that were cited by the appellant on the issue of whether Rogers applies are different. The Peaky Blinders case, first of all, simply a district court decision, and the holding that the use in connection with beer did not convey a viewpoint. Certainly, the use in conjunction with the inverted capital, and in conjunction with commentary, is quite different. The Hush Hush case was also very different. In that case, the secondary user denied any creative use. Again, another district court decision. But that case also conflicts with Fox in finding that focus on the use as a brand is relevant. The Ninth Circuit in Fox at 1197 rejected this very argument. And of course, the Kentucky case, similarly, the district court decision. You said the context is factually different. What do you mean? Well, the Hush Hush case involved... The Hush Hush. I thought you were talking about the Empire case. Oh, no, no, no, no, no. I mean, we believe that Fox is controlling. And indeed, the similarity between the uses in Fox is much more striking than in this case. Here, you have the gold standard for online greeting cards, and an insider political commentary. They're targeted at different audiences. It's very clear that they're targeted at different markets. In Fox, you had use of the word empire for a record company, and then use of the word empire for a fictional record company that included the release of records and ancillary products. The use in that case was much, much closer than in this case. This case, I think, is a much easier case than Fox. And Fox, we believe, is absolutely controlling. The Kentucky case, again, obviously not a district court case from the Sixth Circuit, not controlling. But that case merely says that the Sixth Circuit hadn't determined if the test could be applied to news gathering. But actually, the ETW, the Jewish case, 332 F. 3rd at 924 to 25, does say that it applies. There's no doubt that it applies as well to entertainment and news. And again, it's not a Sixth Circuit case, and that involved news reporting. Here, we're talking about commentary, opinion, much higher level of First Amendment protection. Unless there are further questions on this part, I'd like to cede the balance of my time to my colleague, Rebecca Guyon, to talk about the discovery issues and waiver. Thank you. Good morning, Your Honors. Briefly, as I know I have limited time, I'd like to speak to the discovery issues and the factual questions that appellant has raised before the court today. Your Honors raised the question of why there is not a factual issue to explore with respect to the explicitly misleading prong of the Rogers test. I believe that this is a case where appellant would like to draw an analogy to Gordon v. Drape Collective and take the position that this is a case also testing the outer limits of Rogers because it involves, as appellant has attempted to argue, the use of the mark without much else. We would respectfully submit that this is factually distinguishable in almost every way from Gordon v. Drape Collective. This is not a case that involved the bare use of the identical mark. As we've pointed out, we use punchable news, not punchable, and we use it in the context of an overall expressive work, news reporting and political commentary from an insider perspective on the D.C. Capitol. This is also not a case that tests the outer limits of Rogers, as the Gordon court pointed out, because it's a case that tests the outer limits of Rogers. In Gordon, the language used is if consumers would ordinarily identify the source by the mark itself, and there is a hypothetical in Gordon in connection with using Disney's trademark on a picture of Mickey Mouse. This is not a case where we are using punchable on a photograph of a greeting card. This is a case where we are using punchable news in the context of political reporting and other expressive insider commentary. As your honors have pointed out, the Ninth Circuit has repeatedly found that consumers do not identify or expect to identify the source of a work by its title. That goes back to Mattel v. MCA Records and has repeatedly been recognized by this court. This is a case where punchable news is the title of a political reporting and insider commentary. One of the things I hear your friend on the other side saying is that the case law has become basically too restrictive and there really is not a strong form First Amendment interest in disallowing discovery, even if you may ultimately win. I think one of the things he's saying is I should at least be allowed to press these claims further. Is he right? No, respectfully not, your honor. I think this court has before affirmed decisions on Rogers v. Grimaldi at the motion to dismiss stage. Brown v. Electronic Arts is one example of that. Informative before the court in Brown v. Electronic Arts was the fact that the type of evidence that Brown put forward as what he would like the court to allow further discovery into would not be informative to the explicitly misleading prong of the Rogers test. For example, on Brown v. Electronic Arts, there was a possibility that there was actually the use of Brown in the video game itself. There was also a reference to an academic conference where Electronic Arts allegedly said that Brown may have endorsed the game. This court held that Brown v. Electronic Arts would not demonstrate that it is explicitly misleading because it nonetheless falls short of an overt reference or an overt reference to, in this case it would be punchable. Before in Gordon, I recognize as our counsel has strained to draw analogies, the court said maybe you do not need to have a mechanical test and we reject the requirement that to be explicitly misleading, the defendant must make an affirmative statement of the plaintiff's sponsorship or endorsement. But again, that involved a case unlike here where a consumer, there was evidence before the court that consumers would identify a greeting card by a mark in the side of the card. And that is simply not the case before the court today. We do not identify ourselves solely by the title of punchable news, as the court has repeatedly found, and we also have many explicit references in the record to our founders as a source of content on punchable news, which is why further discovery into that would not be illuminative and is not necessary. And I'll end there. Thank you. Thank you, counsel. Let's go, let's go five. Thank you. Thank you, Your Honor. Much appreciated. I'll be very quick. A few things. The opposing counsel mentioned, Mr. Ballin mentioned something about these being, the parties' products being offered in completely different markets, and that's part of the lower court's decision. In fact, the lower court said that on the one hand, my client's market is mothers with young children, their client's market is individuals who follow politics closely, as if those are mutually exclusive groups. I mean, I think even a shred of discovery would destroy that basis, and we will be able to show that mothers with young children do, in fact, follow politics closely. Opposing counsel has often pointed to the way in which they use the mark to differentiate themselves from the Draper case and from other cases. But we're relying on no discovery at all. They're cherry-picking what they want to put in front of this court to show how they use. We don't know what brochures they send out to potential clients. We don't know what communications they send to people when they organize events and galas. We don't know the full extent of what they offer or how they use the mark. All we have is them saying, well, here's our web page. Trust us. That's it. That's the only thing we're using. We probably have a little more than that, though. I mean, these do seem like fairly different types of businesses. They share a commonality. They have an online, significant online feature to them, but I don't think that can be enough. I think one thing that discovery would show is that there, like I said earlier, that there is event planning that both parties engage in. I mean, they can't stand up here and say they don't do that, because they know they do. And that's the whole purpose of our, a lot of our online communications are to facilitate events that people are planning. There's overlap right there. But of course, we have our hands tied behind our back, because we haven't been able to explore this at all in discovery. This, I mean, this circuit applies Rogers differently from at least two other circuits, the Second Circuit and the Fifth Circuit, that apply Rogers. I mean, the ironic thing is the Second Circuit is where this entire doctrine was born. But they still consider the likelihood of confusion factors. They do a modified analysis of it. They don't just overlook it, though. So I think in this case, when you're, A, not dealing with an artistic work, B, changing their brand wouldn't impact their ability. We're not dealing with an artistic work in, meaning what? That it's not artistic in a art type way? Because it's certainly that the work seems to be fairly expressive. It's expressive. But I'm saying that in art, art is different than news and politics. I mean, okay, you can say there's some degree of art in how you report. I mean, it seems like a lot of the arguments you're making, which I do appreciate, are more of a reaction to, you know, 15 or 20 years worth of case law from this court that have set up the doctrine in a certain way. Well, I don't think that we, this court has ever gone this far. So that we're talking about, I mean, first of all, I mean, in what cases involved a news publication? I can think of New Kids on the Block. And in that case, it was very different. You were talking about one use, not as the name. It's a factual distinction. I don't know that it's a particularly helpful one, though, from a First Amendment standpoint, it would seem, if anything, it would, it would cut against you. Well, I think it stands to reason that the title of an artistic work, something like we think of a movie or a song or a TV show, has a greater degree of relationship to the content than the name of a political reporting publication. That's why artistic works, it's dangerous. If you tell someone who's creating a piece of art, you can't call it this. You really are impacting the message that they're sending. Here, their First Amendment activities are gathering news and reporting. Changing the name wouldn't affect that at all. So quickly, again, I think this circuit, in situations like this, when you're dealing with news reporting and commentary, there should be some consideration of likelihood of confusion factors and some discovery should be taken so that we can examine exactly how they use the mark and what goods and services they offer under the mark, which we were not permitted to do. If you took their arguments all the way to where they want them to go, I mean, imagine the standard that we're setting. We're saying if you have a news reporting publication, you can call it virtually anything as long as you come up with some connection between your name and the content of your publication. So let's say I wanted to create a publication that focused on electric vehicles and I called it Tesla News because Nikola Tesla had something to do with the development of electricity. Well, Tesla, the car company, would not have a claim because I'm reporting things in this publication. There's a connection. There's a relevance between the word Tesla because Nikola Tesla, they invented the AC current electrical supply system and that's it. That's the end of the analysis. I mean, there's relevance between Tesla and the content. Tesla, the car company, has federal trademark registrations. Finally, last thing I'll note, they know it's a brand. They filed trademark applications for these marks. That shows you what they think of Punchbowl. It's not just an expressive communication. It's a brand. Thank you. Thank you, counsel. Thank you both again for fine briefing and argument in this case. This matter is submitted.
judges: OWENS, BRESS, Fitzwater